UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          'O'  JS-6

| Case No. | 2:15-cv-05867-CAS (JPRx) | Date | February 27, 2017 |
|---|---|---|---|
| Title | ROBERT GARBER V. UNITED STATES OF AMERICA | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Not Present                                               Not Present

**Proceedings:** (IN CHAMBERS) - DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Filed July 27, 2016, Dkt. 78)

PLAINTIFF'S MOTION FOR SECOND DEPOSITION (Filed December 19, 2016, Dkt. 128)

## I. INTRODUCTION AND PROCEDURAL HISTORY

On August 4, 2015, plaintiff Robert Garber, proceeding pro se, filed the instant action against defendants the United States of America, the Department of Health and Human Services ("HHS"), Roland Giedraitis ("Dr. Giedraitis"), Grace Hardy ("Dr. Hardy"), and the Northeast Valley Health Corporation ("NVHC"). Dkt. 1. On October 28, 2015, the United States Attorney for the Central District of California filed a notice of substitution indicating that the United States of America was the appropriate defendant in this case. Dkt. 16. Accordingly, on November 3, 2015, the Court ordered the caption in this case corrected to name only the United States of America as the defendant in this action. Dkt. 22.

On November 18, 2015, plaintiff filed a Second Amended Complaint ("SAC"), in which he asserts claims for (1) medical malpractice; (2) negligence; and (3) aiding and abetting. Dkt. 29. On February 9, 2016, the Court dismissed plaintiff's claim for "aiding and abetting." Dkt. 36. In brief, plaintiff alleges that between 2011 and 2014, he sustained injuries as a result of negligent dental care performed by Dr. Giedraitis and Dr. Hardy at the NVHC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| Case No. | 2:15-cv-05867-CAS (JPRx) | Date | February 27, 2017 |
|---|---|---|---|
| Title | ROBERT GARBER V. UNITED STATES OF AMERICA | | |

On July 27, 2016, the United States filed a motion for summary judgment. Dkt. 78. The Government's motion relies, in part, upon a declaration by Dr. Kenneth Jacobs ("Dr. Jacobs") in which Dr. Jacobs states that plaintiff's dental care satisfied the appropriate standard of care for dental treatment. On October 24, 2016, the Court held oral argument on defendant's motion. At that time, Garber had not yet filed an opposition. Instead, Garber sought to depose Dr. Jacobs. See Dkt. 72. The Court granted a continuance to plaintiff.

On December 14, 2016, plaintiff conducted a deposition of Dr. Jacobs. Thereafter, on December 19, 2016, plaintiff filed a motion requesting a second deposition of Dr. Jacobs. Dkt. 128. On December 21, 2016, the United States filed an opposition. Dkt. 129. On December 22, 2016, the Court took plaintiff's motion for a second deposition under submission, pending plaintiff's preparation and submission of a deposition transcript. Dkt. 130. On December 27, 2016, plaintiff filed a reply in support of his motion for a second deposition. Dkt. 132.

On January 23, 2017, plaintiff filed a memorandum in opposition to the Government's motion for summary judgment, dkt. 136, as well as a number of exhibits, dkt. 140.[1] On January 30, 2017, the defendant filed a reply in support of its motion for summary judgment. Dkt. 143.

On February 6, 2017, the Court distributed a draft order, tentatively granting summary judgment. Thereafter, the Court invited oral argument on the foregoing motions. Plaintiff commenced oral argument in response to the Court's tentative ruling; however, because of health concerns, plaintiff's oral argument was cut short and the hearing abruptly ended. As a result, the Court took defendant's motion for summary judgment under submission and granted plaintiff until March 20, 2017, to file a supplemental brief addressing the Court's tentative order. Dkt. 145. On February 17, 2017, plaintiff filed a "declaration in lieu of supplemental brief," in which plaintiff stated that he would not file any further briefing in opposition to the motion for summary judgment. Dkt. 147.

---

[1] On January 26, 2017, plaintiff filed a "notice of involuntary omission" stating that plaintiff had accidentally omitted a page from his opposition (page 37) and a page from his exhibits (page one of the appendices). Dkt. 142. The Court will consider each as though they had been included in plaintiff's original filing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'   JS-6

| | | | |
|---|---|---|---|
| Case No. | 2:15-cv-05867-CAS (JPRx) | Date | February 27, 2017 |
| Title | ROBERT GARBER V. UNITED STATES OF AMERICA | | |

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND

Except where otherwise noted, the following facts are undisputed.

Plaintiff's claims stem from his dental treatment by a federally funded nonprofit, Northeast Valley Health Corporation. In or around 2001, plaintiff became a dental patient at NVHC, which provides comprehensive dental and medical care to the uninsured, indigent, and medically vulnerable. After his first dental examination, NVHC staff noted that plaintiff had a severe periodontal disease, which typically causes bone loss and subsequent tooth loss.[2]

In 1976, plaintiff received a removable partial upper denture ("PUD"). A partial upper denture consists of prosthetic teeth attached to a base which are anchored for stability to the natural teeth still in a person's mouth. A removable PUD attaches to natural teeth with either a precision attachment or clasps. A precision attachment is an interlocking mechanism in which the PUD and natural teeth are attached by the connection of male and female parts on each side of the mouth. When a PUD is attached via a precision attachment, the user may hear the two parts click into one another. In contrast, a clasp is cast as part of a PUD framework. Clasps permit a dentist to more easily make adjustments. Clasps are less expensive to create, install, and alter than precision attachments. Plaintiff's original PUD was designed with precision attachments.

---

[2] Plaintiff purports to dispute whether or not NV staff noted his periodontal disease and bone loss at his first examination. See Statement of Genuine Disputes No. 27. There appears to be evidence from plaintiff's medical record supporting an inference that NV staff diagnosed plaintiff as suffering from periodontal disease. See e.g. Jacobs Decl. ¶ 12. In response, plaintiff does not direct the Court to admissible evidence demonstrating that a material dispute exists. Instead, plaintiff cites two lines from his opposition memorandum, which states, "Physicians, car mechanics, and cops, always picture the worst case scenario to forestall future eventual complaints, and liability." Opp'n at 32:10-11. To the extent that plaintiff disputes whether he suffers periodontal disease, it appears to be undisputed that his doctors diagnosed him with periodontal disease.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' JS-6 |
|---|---|---|---|
| Case No. | 2:15-cv-05867-CAS (JPRx) | Date | February 27, 2017 |
| Title | ROBERT GARBER V. UNITED STATES OF AMERICA | | |

    When he became a patient at NVHC, NVHC staff told plaintiff that his periodontal disease would cause further bone loss, requiring serial modifications to his PUD. By the time plaintiff became a patient at NVHC, his PUD had already exceeded its normal service-life.[3] NVHC staff notified plaintiff that the many requisite modifications would eventually make his PUD unserviceable. NVHC dentists and hygienists repeatedly told plaintiff to replace his PUD with a full denture because of his poor dental health and ongoing bone loss. Plaintiff insisted upon retaining his PUD.
    NVHC does not, itself, fabricate or alter PUDs. Instead, an NVHC dentist takes an impression of the patient's mouth where the prosthetic will be placed and sends a request for PUD alterations or fabrication to an independent contractor at a third-party laboratory.

    Plaintiff's PUD originally relied upon a precision attachment in the upper right and left sides of plaintiff's jaw. The male portions of the precision attachments were on the PUD and the female portions were in plaintiff's mouth. Specifically, the precision attachment on the upper right side locked into place by connecting with a bar, or mini-bridge, between two of plaintiff's teeth. The precision attachment on the upper left side of the PUD interlocked with a ring between two of plaintiff's teeth on the upper left portion of his mouth.[4]

---

[3] According to Dr. Jacobs, the average service life of a partial denture is five to ten years. Jacobs Decl. ¶ 15.

[4] In dentistry, each tooth is assigned a number for staff to reference in their reporting and diagnoses. Plaintiff appears to dispute the numbers assigned to the teeth relating to his precision attachment. For instance, Dr. Giedraitis, plaintiff's NVHC dentist, contends that the mini-bridge in the upper right portion of plaintiff's mouth was between natural teeth numbers two and five, and crossed through two prosthetic teeth, numbers three and four. Giedraitis Decl. ¶ 9. Plaintiff contends that tooth three was a natural tooth and that his mini-bridge was connected to tooth number three instead of tooth two. For support, plaintiff cites a portion of what appears to be his dental records from the Herman Ostrow School of Dentistry of USC ("the Ostrow School") in 2015. Opp'n Appendices Ex. 9. The Ostrow School records appear to state that plaintiff had tooth number three extracted prior to receiving a full upper denture in December 2015. See Opp'n Appendices Ex. 9 pg. 6. During plaintiff's deposition of Dr. Jacobs, Dr. Jacobs offered his opinion that some of plaintiff's dental records from the Ostrow School

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**    'O'  JS-6

| Case No. | 2:15-cv-05867-CAS (JPRx) | Date | February 27, 2017 |
|---|---|---|---|
| Title | ROBERT GARBER V. UNITED STATES OF AMERICA | | |

On January 23, 2009, Dr. Giedraitis extracted one of the teeth to which plaintiff's mini-bridge had been attached because it was, "hopeless . . . [and] floating in perio[dontal] abscess." Giedraitis Decl. ¶ 12. In order to remove the tooth, Dr. Giedraitis had to cut the mini-bridge in the upper right side of plaintiff's jaw.[5] After removing plaintiff's natural tooth, Dr. Giedraitis placed an order with NVHC's contract laboratory to add a prosthetic tooth to the PUD. NVHC records indicate that Dr. Giedraitis's "plan" was to "add a wire clasp on 6" to replace the former precision attachment on that side of plaintiff's mouth.[6] Nietscu Ex. A US0004.

---

included incorrect tooth numbering. Jacobs Depo. 43:18-19 ("their tooth numbering is incorrect. They didn't extract No. 3. They extracted No. 2").

Plaintiff has not offered any foundation for the Ostrow School records demonstrating that they are authentic, relevant, and admissible despite being hearsay. However, even if the Court considers the exhibits offered by plaintiff, it does not appear necessary to resolve the parties' dispute regarding the proper numbering of plaintiff's teeth. As discussed in more detail below, the precise numbering of plaintiff's teeth in the various records does not appear to be material to plaintiff's claims.

[5] The parties dispute whether the PUDs precision attachment continued to function properly after Dr. Giedraitis cut the mini-bridge in plaintiff's mouth. Dr. Giedraitis and Dr. Jacobs have both stated that once that mini-bridge was cut, the male portion of the precision attachment could not attach properly and firmly to the female portion in the mini-bridge. Giedraitis Decl. ¶ 13; Jacobs Depo. 37:18-20. Plaintiff appears to contend that the female portion of the precision attachment was still functional because it was still present in the severed mini-bridge.

[6] The parties dispute when a clasp was *actually* added to plaintiff's tooth number six. Plaintiff avers that the PUD relied solely upon its precision attachment prior to October 13, 2011. According to plaintiff, wire clasps were first added to the PUD after an appointment in mid-October 2011. However, plaintiff's records from NV appear to reflect that, on October 13, 2011, plaintiff already had clasps on teeth six and eleven. Nitescu Decl. Ex A US0014-15 ("Pt presents with broken clasps on 6 and 11 . . . Pt needs clasps to stabilize PUD"). Dr. Giedraitis has stated that he does not recall when plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| | | | |
|---|---|---|---|
| Case No. | 2:15-cv-05867-CAS (JPRx) | Date | February 27, 2017 |
| Title | ROBERT GARBER V. UNITED STATES OF AMERICA | | |

On February 26, 2009, Dr. Giedraitis returned the modified PUD to plaintiff. On March 19, 2009, plaintiff visited NVHC complaining that his PUD was loose. Dr. Giedraitis assessed plaintiff as requiring a new clasp or precision attachment. Plaintiff told Dr. Giedraitis that he did not want a clasp because it did not look good and that plaintiff would proceed with his existing PUD.

On October 13, 2011, plaintiff visited NVHC for an appointment with Dr. Giedraitis. During the October 13, 2011 appointment, Dr. Giedraitis placed an order to add new wire clasps to the PUD on tooth six and tooth eleven. Dr. Giedraitis avers that he placed the order for two new clasps because the existing clasp and precision attachment had stopped working. Dr. Giedraitis took an impression of plaintiff's mouth so that the lab could add the appropriate clasps. Dr. Giedraitis did not explain to plaintiff that the clasps were necessary because the precision attachment could not be repaired.

On October 20, 2011, plaintiff returned to NVHC to retrieve the altered PUD. Dr. Hardy, with whom plaintiff met on October 20, 2011, adjusted the clasps to properly fit on plaintiff's teeth and delivered the PUD to plaintiff. After receiving the altered PUD plaintiff became very upset that the PUD now had two clasps in place of its former attachments.

---

obtained a wire clasp on tooth six and that NV records do not reflect a specific order to the laboratory for a clasp on tooth six. Giedraitis Decl. ¶ 22.

Dr. Jacobs testified during his deposition that the records are "ambiguous in regards to when specifically the clasp on No. 6 was added." Jacobs Depo. 26:11-15. Dr. Jacob's opinion on this matter is somewhat unclear. In his declaration, Dr. Jacobs states, "a clasp had been on natural tooth 6 since at least 2009." Jacobs Decl. 39. After reviewing page US0014 of plaintiff's NV records, Dr. Jacobs appears to have testified during his deposition that the Clasp on tooth six was first installed in October 2011. Jacobs Depo. 26:24-27:7. It is unclear what evidence Dr. Jacobs relied upon during his deposition to support the proposition that a Clasp was installed for the first time on tooth six in October 2011, which does not appear to be stated in the NV records upon which the parties' relied during Jacob's deposition.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| Case No. | 2:15-cv-05867-CAS (JPRx) | Date | February 27, 2017 |
|---|---|---|---|
| Title | ROBERT GARBER V. UNITED STATES OF AMERICA | | |

On January 10, 2013, Dr. Giedraitis extracted tooth number six because of plaintiff's periodontal disease. After the extraction of tooth six, to which the PUD had been clasped, Dr. Giedraitis ordered the laboratory to add a new clasp at tooth two for stability and to add a prosthetic tooth in the place of tooth six. Plaintiff received the newly repaired PUD on February 7, 2013.

On December 5, 2013, plaintiff visited NVHC to pursue assistance with pain relating to the clasp on tooth eleven. Dr. Giedraitis took impressions and sent the PUD for repair. On December 12, 2013, Dr. Giedraitis returned the PUD to plaintiff with clasps at tooth two and eleven, but realized that it still had problems. Dr. Giedraitis noted that the PUD needed a new clasp at tooth two and that the newly repaired clasp on tooth eleven was injuring plaintiff's gum. Dr. Giedraitis took another impression of plaintiff's mouth and sent the PUD for additional repairs. On December 19, 2013, Dr. Giedraitis delivered the PUD back to plaintiff.

On December 20, 2013, plaintiff returned to NVHC as an emergency, walk-in patient complaining of pain. Dr. Giedraitis noted that plaintiff's gums around tooth eleven were inflamed and possibly infected. Dr. Giedraitis recommended that plaintiff install a new removable partial denture since his outdated PUD was in disrepair.[7] Plaintiff refused and insisted that NVHC repair the precision attachments on his PUD or install a new precision attachment. Dr. Giedraitis told plaintiff that NVHC could not repair or install precision attachments and that plaintiff should visit another treatment facility that might be able to do the requested work. Dr. Giedraitis also prescribed antibiotics and pain medication for plaintiff's infection.

On January 3, 2014, plaintiff returned to NVHC for a follow up appointment. Plaintiff's dental records state, "areas of irritation and pain are now just about gone." Nitescu Decl. Ex. A US0022. However, plaintiff disputes the January 3, 2014 dental record's characterization of his infection arguing, "R. Giedraitis stated he could not help

---

[7] The foregoing is based upon plaintiff's NV records. See Nitescu Decl. Ex. A US0021. Plaintiff disputes whether or not Dr. Giedraitis advised him to seek a new PUD, see Statement of Genuine Disputes No. 74; however, plaintiff does not direct the Court to evidence creating a material dispute. Instead plaintiff states in response, "DISPUTED Cover Up." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'   JS-6

| Case No. | 2:15-cv-05867-CAS (JPRx) | Date | February 27, 2017 |
|---|---|---|---|
| Title | ROBERT GARBER V. UNITED STATES OF AMERICA | | |

me anymore . . . R. Giedraitis' and Dr. Jacobs' allegations that the problems on 11 & 12 were resolving is criminal." Opp'n at 7.

During the January 3, 2014 appointment, plaintiff again insisted that NVHC repair the precision attachments on his PUD. Dr. Giedraitis repeated his earlier answer that NVHC could not repair plaintiff's precision attachment or install a new precision attachment.

At plaintiff's request, Dr. Giedraitis and NVHC management met with plaintiff on January 30, 2014. Plaintiff insisted against the NVHC repair the precision attachment on his PUD. NVHC stated that NVHC could not repair the precision attachment.

On February 9, 2015, the Dental Board of California received a complaint from plaintiff regarding Dr. Giedraitis and Dr. Hardy. The Dental Board investigated the complaint and determined that there was no evidence supporting administrative action against the dentists' licenses.

On April 1, 2014, plaintiff filed a small claims case against the defendants here, in which the United States substituted as a defendant. After the case was removed to federal court, this Court dismissed plaintiff's claims for failure to exhaust administrative remedies. See Case No. 2:14-cv-04547-CAS. On December 30, 2014, the Department of Health and Human Services received an administrative tort claim from plaintiff. On May 12, 2015, the Department of Health and Human Services denied plaintiff's administrative tort claim.

### III. PLAINTIFF'S MOTION FOR A SECOND DEPOSITION

The Court has reviewed plaintiff's motion for a second deposition of Dr. Jacobs and the transcript of the December 14, 2016 deposition of Dr. Jacobs. Plaintiff appears to contend that the Assistant United States Attorney assigned to this case committed misconduct by disrupting and/or unfairly impeding the deposition.

Having closely examined the deposition transcript in its entirety, there does not appear to be a basis for permitting a second deposition. Plaintiff's request for an additional deposition is **DENIED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'  JS-6

| | | | |
|---|---|---|---|
| Case No. | 2:15-cv-05867-CAS (JPRx) | Date | February 27, 2017 |
| Title | ROBERT GARBER V. UNITED STATES OF AMERICA | | |

**IV. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

    **A. Legal Standard**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL     'O' JS-6

| | | | |
|---|---|---|---|
| Case No. | 2:15-cv-05867-CAS (JPRx) | Date | February 27, 2017 |
| Title | ROBERT GARBER V. UNITED STATES OF AMERICA | | |

**B.**     **Discussion**

        **1.**     **Evidence of a Duty, Breach, and Causation**

Plaintiff alleges a claim for medical malpractice and a claim for negligence.[8] The "fundamental substance" of a claim for negligence and a claim for medical malpractice is the same, as are each claim's elements. Mero v. Sadoff, 37 Cal. Rptr. 2d 769, 775 (1995). To prove medical malpractice, plaintiff must show:

> (1) a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of the duty; (3) a proximate causal connection between the negligent conduct and the injury; and (4) resulting loss or damage.

Johnson v. Superior Court, 49 Cal. Rptr. 3d 52, 58 (2006). "[W]here the conduct required of a medical professional is not within the common knowledge of laymen, a plaintiff must present expert witness testimony to prove a breach of the standard of care." Bushling v. Fremont Med. Ctr., 11 Cal. Rptr. 3d 653, 664 (2004).

Defendant argues that it is entitled to summary judgment regarding plaintiff's claims because plaintiff cannot present expert evidence demonstrating defendant breached its professional duties to plaintiff or caused plaintiff's injuries. According to

---

[8] Plaintiff's second claim is entitled "Negligence - Personal Injury – Infliction of Emotional Distress." SAC pg. 14. Plaintiff appears to acknowledge that, although he may seek emotional damages caused by defendant's alleged negligence, his claim for negligent infliction of emotional distress overlaps with his general negligence and medical malpractice claims and is not an independent tort. See Opp'n at 38 ("Where a plaintiff is physically injured, damages for resulting emotional distress are recoverable as 'parasitic' damages even that [sic] California does not recognize this as an independent tort/claim"); Gu v. BMW of N. America, LLC, 132 Cal. App. 4th 195, 204 (2005) (a direct victim cannot bring an independent claim for negligent infliction of emotional distress, which is reserved for a "bystander theory" of liability). Accordingly, the Court proceeds by evaluating plaintiff's general claim for negligence and plaintiff's claim for medical malpractice.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' JS-6 |
|---|---|---|---|
| Case No. | 2:15-cv-05867-CAS (JPRx) | Date | February 27, 2017 |
| Title | ROBERT GARBER V. UNITED STATES OF AMERICA | | |

the Government, it is undisputed that plaintiff's treatment at NVHC met or exceeded the standard of care applicable to dentists under the circumstances of this case.

In support of its motion, the Government relies upon a declaration by Dr. Jacobs, who offers his opinion that the dentists at NVHC met the appropriate standard of care in their treatment of plaintiff. See Jacobs Decl. ¶ 50. Dr. Jacobs is a dentist licensed to practice in the State of California. Id. ¶ 1. He has been licensed to practice dentistry for thirty years. Id. ¶ 3. Dr. Jacobs is a Fellow with the American College of Dentists, an honor bestowed by invitation only and through a confidential peer-review system. Id. ¶4. He was president of the Los Angeles Dental Society from 2012 to 2013 and since 2015 he has been a Council Member of the Judicial Council of the California Dental Association. Id. ¶ 6. He has operated a private dental practice since 1988, with an emphasis on restorative dentistry. Id. ¶ 8. Dr. Jacobs avers that his opinions are based upon his review of the relevant documents in this case and are held to a reasonable degree of professional certainty. Id. ¶ 10. Plaintiff does not appear to contest Dr. Jacobs' credentials or the adequacy of Dr. Jacobs' review of the evidence in this case.

Dr. Jacobs is of the opinion that NVHC "met the standard of the care [sic] in their care and treatment of Plaintiff." Id. ¶ 50. Specifically, Dr. Jacobs believes that NVHC did not breach its standard of care when it extracted tooth five in 2009 or when it made repairs to the PUD in 2011. Id. ¶ 51. "Given the age and foreign origin of Plaintiff's precision attachment, and the fact that precision attachments involve precise, individualized mechanics, the precision attachment could not have been repaired to a functional status." Id. ¶ 52. Additionally, plaintiff's periodontal disease caused the precision attachment to fail because the natural teeth to which the PUD could be attached continually deteriorated and were replaced with prosthetic teeth. Id. ¶ 53. NVHC's serial modifications of the PUD further met the standard of care and indicated a desire to comply with plaintiff's wishes to retain his PUD. Id. ¶ 54. According to Dr. Jacobs, a precision attachment could not have solved plaintiff's ongoing periodontal problem. Id. ¶ 55. Furthermore, according to Dr. Jacobs, the use of clasps on a PUD in place of a precision attachment could not possibly have caused plaintiff's injuries, which were caused, instead, by plaintiff's periodontal disease. Id. ¶¶ 56-7. Put simply, Dr. Jacobs states that he "cannot conceive of any possible scenario where clasps on a PUD could produce the type of permanent injuries that Plaintiff claims he suffered." Id. ¶ 58.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' JS-6 |
|---|---|---|---|
| Case No. | 2:15-cv-05867-CAS (JPRx) | Date | February 27, 2017 |
| Title | ROBERT GARBER V. UNITED STATES OF AMERICA | | |

Based upon the foregoing, defendant has met its initial burden of demonstrating that evidence exists which may entitle it to summary judgment. If NVHC did not breach a professional standard of care in treating plaintiff and did not cause plaintiff's injuries, then plaintiff cannot succeed at trial on his negligence claims. Accordingly, the burden shifts to plaintiff to present evidence demonstrating that there is a material factual dispute.

As an initial matter, plaintiff disputes the appropriate numbering of the teeth in his dental records. Plaintiff has not presented admissible evidence demonstrating NVHC made errors in its record-keeping. To the extent that plaintiff relies upon the tooth labels in the Ostrow School records of his dental care, plaintiff has not lain foundation for those records' consideration. Assuming arguendo that the records are admissible evidence and actually contradict the tooth labeling in NVHC's treatment records, which is unclear without further foundation, plaintiff has failed to demonstrate that labeling errors are material to his negligence claims. Any potential labeling errors, if they exist and were made by NVHC, do not appear to have caused injury to plaintiff. Accordingly, there does not appear to be a material issue of disputed fact regarding the appropriate numbering of plaintiff's relevant teeth.

With respect to Dr. Jacobs' opinions, plaintiff avers that they are "disputed," but does not direct the Court to evidence demonstrating a factual dispute. See generally Statement of Genuine Issues 82-90. In his memorandum, plaintiff makes several arguments regarding the standard of care and breach. Plaintiff argues that defendant had a duty to warn of risks involved in his treatment, Opp'n at 27; that defendant was required to seek informed consent prior to treatment, id.; that defendant had a duty to appropriately administer antibiotics[9], id. at 28; and that defendant was required not to

---

[9] Plaintiff does not direct the Court to any evidence supporting a negligence claim based upon negligent administration of antibiotics. It is undisputed that on December 20, 2013, plaintiff reported pain and inflammation to NVHC as a walk-in patient. It is also undisputed that plaintiff received an antibiotic prescription on the same day. Plaintiff does not direct the Court to any evidence suggesting that this was a breach of defendant's duties to plaintiff or caused plaintiff injury.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   'O'  JS-6

| Case No. | 2:15-cv-05867-CAS (JPRx) | Date | February 27, 2017 |
|---|---|---|---|
| Title | ROBERT GARBER V. UNITED STATES OF AMERICA | | |

fraudulently tamper with plaintiff's dental records[10], id. 28-32. The gravamen of plaintiff's argument appears to be that during the October 13, 2011 appointment, Dr. Giedraitis failed to appropriately warn plaintiff that the precision attachment on plaintiff's PUD would be replaced with clasps on tooth six and tooth eleven. According to plaintiff, if he had been informed that NVHC intended to add clasps to his PUD, he would not have consented to the treatment. Plaintiff contends that he arrived at the October 13, 2011 appointment with a PUD that relied upon a precision attachment. Plaintiff claims that he left the PUD in NVHC custody for repairs, believing that the precision attachment would be repaired, only to discover on October 20, 2011, that NVHC had added clasps in the place of the precision attachment. According to plaintiff, the addition in 2011 of clasps onto his PUD set in motion years of deteriorating dental health.[11]

Even if the Court were to accept plaintiff's contentions as evidence, there does not appear to be a material issue of disputed fact. Plaintiff's opinion about the cause of his deteriorating dental health and plaintiff's unhappiness with the clasps on his PUD are insufficient to demonstrate a material issue of disputed fact such that the case should proceed to trial. The accuracy of plaintiff's periodontal disease diagnosis, the necessity of the clasps on his PUD, the efficacy of NVHC's treatment decisions, and the adequacy of defendant's warnings are all beyond the common knowledge of a layperson.

---

[10] Plaintiff argues that his dentists at NVHC have altered his dental records and made false statements during this litigation in an effort to cover up their alleged malpractice. Plaintiff's bare allegations find no support in the evidentiary record.

[11] The foregoing summary of plaintiff's factual contentions is based upon the Court's understanding of the contents of plaintiff's opposition memorandum. Plaintiff, proceeding pro se, has not presented documentary evidence or a sworn affidavit supporting these contentions.

As discussed in the background, it is unclear from the present record whether a clasp on tooth six was first installed in 2009, after tooth five was extracted, or in October 2011. If a clasp was installed prior to 2011, it is unclear by whom. It is undisputed, however, that on October 11, 2011, defendant placed an order for plaintiff's PUD to have two new clasps installed because the PUD was not properly secured to plaintiff's teeth.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| | **CIVIL MINUTES – GENERAL** | | **'O' JS-6** |
| Case No. | 2:15-cv-05867-CAS (JPRx) | Date | February 27, 2017 |
| Title | ROBERT GARBER V. UNITED STATES OF AMERICA | | |

Accordingly, they must be established through expert testimony. Additionally, plaintiff does not direct the Court to any evidence supporting a negligence claim that would not require expert evaluation. Dr. Jacobs' opinions are the only expert opinions presently before the Court. The Court has reviewed plaintiff's deposition of Dr. Jacobs in its entirety. Plaintiff was unable during his deposition of Dr. Jacobs to impeach Dr. Jacobs' testimony, cast doubt upon Dr. Jacobs' opinions, or persuade Dr. Jacobs to withdraw any of his opinions in this case.[12]

In light of the foregoing, it is undisputed that defendant's dental treatment of plaintiff satisfied the standard of care required of dentists under the circumstances present here. Additionally, it is undisputed that plaintiff's physical injuries are the result of plaintiff's periodontal disease rather than defendant's failure to provide adequate treatment. Accordingly, plaintiff has not demonstrated a dispute of material fact regarding defendant's duty, breach, or causation of plaintiff's injuries. On this basis alone, defendant is entitled to summary judgment.

### 2. Statute of Limitations

Defendant argues that the statute of limitations provides an independent basis for summary judgment regarding plaintiff's claims.

"It is well settled that the United States is a sovereign, and, as such, is immune from suit unless it has expressly waived such immunity and consented to be sued." Gilbert v. DaGrossa, 756 F.2d 1455, 1458 (9th Cir. 1985). "The doctrine of sovereign immunity applies to federal agencies and to federal employees acting within their official capacities." Hodge v. Dalton, 107 F.3d 705, 707 (9th Cir. 1997). Where the United States is sued for negligence by a private person, the Federal Tort Claims Act ("FTCA") provides a limited waiver of sovereign immunity. See 28 U.S.C. § 1346(b)(1). However,

---

[12] Much of the deposition appears to have been expended on the ambiguities already discussed. Plaintiff questioned Dr. Jacobs regarding the appropriate numbering of plaintiff's teeth in his records. Plaintiff also attempted to establish that the clasps on his PUD were first installed by NVHC in October 2011. There does not appear to be admissible, conflicting evidence in regard to either area of dispute; however, as already discussed, assuming plaintiff is correct about these factual ambiguities, they do not establish that defendant breached a duty to plaintiff or caused his injuries.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      'O'   JS-6

| Case No. | 2:15-cv-05867-CAS (JPRx) | Date | February 27, 2017 |
|---|---|---|---|
| Title | ROBERT GARBER V. UNITED STATES OF AMERICA | | |

claims brought pursuant to the FTCA must be presented, "in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b). Thereafter, if the agency denies the claim, a party may file suit "within six months after the date of mailing . . . of notice of final denial of the claim by the agency to which it was presented." Id.

It is undisputed that plaintiff first presented his administrative tort claim to the Department of Health and Human Services on December 30, 2014. Therefore, any claims that accrued prior to December 30, 2012, appear to be time-barred.

Defendant argues that by at least October 20, 2011, plaintiff was aware or should have been aware of the alleged malpractice such that his claim(s) accrued no later than October 20, 2011. At plaintiff's October 20, 2011 appointment, Dr. Hardy returned plaintiff's PUD to him with clasps on teeth six and eleven. It is undisputed that because plaintiff was unhappy with the modification of his PUD, on October 20, 2011, plaintiff became very upset with his treatment by Dr. Giedraitis and Dr. Hardy. Dr. Hardy noted in plaintiff's dental records, "[Garber] was very upset that a metal attachment was missing from his partial. He didn't understand why we removed the attachment and added the clasps. He was very loud and difficult in the beginning but calmed down at the end." Nitescu Decl. Ex. A at US0015. On December 1, 2011, plaintiff met with his regular dentist, Dr. Giedraitis, about the clasps on his PUD. Id. Dr. Giedraitis noted in plaintiff's dental record:

> No treatment was rendered, talk only; explain to p[atient] the contract was to add clasps only, not clips; he would have to see a prosthetic dentist to do that work which would be very expensive. [Patient] says he will survive with the present partial. Told [patient] long term prognosis poor; eventually will need [full upper denture].

Id.

According to plaintiff:

> The clasps on 6 & 11 were lab requested without taking in consideration that their measure and angles could not then meet the new requirements imposed by the removal of the [precision attachment] and that those millimetric

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        'O'   JS-6

| Case No. | 2:15-cv-05867-CAS (JPRx) | Date | February 27, 2017 |
|---|---|---|---|
| Title | ROBERT GARBER V. UNITED STATES OF AMERICA | | |

> differences would cause so much trouble down the road. I did not see it coming. That happened in December 5, 2013. That period of time is when injury began to hatch.

Opp'n at 6. Plaintiff appears to argue that, because he developed a painful infection in December 2013, his claims accrued in December 2013. If plaintiff were correct, then his claims would not be time-barred.

That a plaintiff "has been injured in fact may be unknown or unknowable until the injury manifests itself." United States v. Kubrick, 444 U.S. 111, 121 (1979). However, "[i]n a medical malpractice case under the FTCA, a claim accrues when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its cause." Landreth By & Through Ore v. United States, 850 F.2d 532, 533 (9th Cir. 1988). "To be aware of an injury, a plaintiff need not know the full extent of his or her injury. The limitations period will run even though the ultimate damage is unknown or unpredictable." Rice By & Through Rice v. United States, 889 F. Supp. 1466, 1470 (N.D. Okla. 1995); see also Gordon v. United States, 967 F.2d 586 (9th Cir. 1992), as amended on denial of reh'g (Oct. 5, 1992) (mother's medical malpractice claim based on child's birth accrued as soon as she was aware the newborn had trouble breathing, not years later when child was diagnosed with cerebral palsy).

In this case, it is undisputed that plaintiff knew or should have known of his injury and its cause prior to December 30, 2012. The gravamen of plaintiff's claim is that NVHC staff committed malpractice by not repairing plaintiff's PUD precision attachment and instead repeatedly adding or modifying the PUD's clasps in October 2011. Although plaintiff may have become aware of some of the alleged consequences of the clasps on his PUD in December 2013, when he developed an infection near tooth eleven, plaintiff acknowledges that he had been upset about the clasps since October 2011. Plaintiff acknowledges that between October 2011 and January 2014, he requested that NVHC install a new precision attachment at "every one of [his] visits." Opp'n at 6 (emphasis original). Further, it is undisputed that as early as December 1, 2011, Dr. Giedraitis had informed plaintiff that he would have to go elsewhere and pay for a "prosthetic dentist" in order to get his precision attachment replaced. Nitescu Decl. Ex. A at US0015. Therefore, by the end of 2011, plaintiff was either aware, or should have been aware, of his alleged injury and its cause. That his injury allegedly continued and became worse is of no consequence to the application of the statute of limitations. Plaintiff's claims

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'   JS-6

| Case No. | 2:15-cv-05867-CAS (JPRx) | Date | February 27, 2017 |
|---|---|---|---|
| Title | ROBERT GARBER V. UNITED STATES OF AMERICA | | |

accrued no later than December 2011, but he first filed his complaint with the Department of Health and Human Services on December 30, 2014. Thus, the statute of limitations provides an independent basis for granting the defendant's motion for summary judgment.

Plaintiff may perceive the Court as an accomplice to injustice in its ruling today. To plaintiff, this case is not "the story of a partial denture and its destroyed 'clicks'," or even a dispute between him and his former dentists. Opp'n at 5. It is, "about the eternal daily fight between good and evil," and what plaintiff perceives to be his "unbroken saga of Big Brother oppression." Id. at 4-5. In plaintiff's opinion, the Court's ruling here is not only error, but "100% *calculatedly* wrong." Dkt. 147 at 2 (emphasis added). Plaintiff characterizes his efforts to litigate this case as those of a "modern rebel" exercising his Constitutional rights only to be "impaled on a sheaf of papers shoved by judicial fiat." Id. at 1-2. Plaintiff's literal collapse during oral argument on this matter underscores the profound importance he attaches to his claim against the Government and, by implication, the dentists who once treated his degenerative gum disease. Indeed, it can scarcely be disputed that plaintiff cares deeply about this case and perceives a great injustice in the Court's grant of summary judgment here.

However, contrary to plaintiff's assertion, this case *is* about his partial upper denture and the "clicks" it once had. Plaintiff's claims are for medical malpractice based upon the installation of clasps where there had once been "clicks." Plaintiff's publicly funded dentists could not provide the dental prosthetic plaintiff would have preferred and plaintiff's relative poverty prevented him from seeking a new PUD and precision attachment elsewhere. In the broadest sense, it may be unjust that plaintiff suffers from a degenerative gum disease or that his dental prosthetic options were limited by his relative wealth. That does not mean that Giedraitis's committed malpractice by having clasps installed on plaintiff's PUD where there had once been "clicks." The undisputed evidence shows that Giedraitis's care met the standard for the industry and that, in any event, plaintiff waited too long after his claim accrued to file a complaint with DHHS. Accordingly, defendant's motion for summary judgment is **GRANTED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' JS-6 |
|---|---|---|---|
| Case No. | 2:15-cv-05867-CAS (JPRx) | Date | February 27, 2017 |
| Title | ROBERT GARBER V. UNITED STATES OF AMERICA | | |

## V. CONCLUSION

Defendant's motion for summary judgment is **GRANTED**. Plaintiff's motion for a second deposition of Dr. Jacobs is **DENIED**.

IT IS SO ORDERED.

                                                                                                00 : 00
Initials of Preparer      CMJ